**UNITED STATES of America,
Plaintiff,**

v.

**James Robert JOINES and Charles Ray
Joines, Defendants.**

**Cr. A. No. 2053.**

United States District Court,
D. Delaware.

May 27, 1971.

Richard D. Levin, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Frank J. Gentile, Jr., Wilmington, Del., for defendants.

## OPINION

LAYTON, District Judge.

On June 16, 1970, the defendants, Charles Ray Joines and James Robert Joines, were charged in a seven count indictment with violations of 18 U.S.C. § 894, i. e., attempting to collect extensions of credit by the use of extortionate means. Trial was held on December 7, 1970, and a verdict of guilty was returned as to four of the six counts.[1] The defendants have filed a motion for judgment of acquittal or new trial in the alternative with respect to these four counts on a variety of grounds.

For judgment of acquittal, they argue the evidence was insufficient to sustain a conviction. The standard to be applied under Rule 29(c) is that "* * * the Court scrutinizes the evidence [including reasonable inferences to be drawn therefrom] from the point of view most favorable to the government and assumes the truth thereof. If there is substantial evidence justifying an inference of guilt irrespective of the evidence adduced by the defendant, the Court must deny the motion. * * *" United States v. Pepe, 209 F.Supp. 592, 594 (D.Del.1962); see also United States v. McGonigal, 214 F.Supp. 621, 622 (D.Del.1963).

As to the sufficiency of the evidence to sustain the convictions in this case, I have reviewed the transcript with great care in a light most favorable to the government and, in drawing reasonable inferences therefrom, conclude that there was sufficient evidence. In each of the four counts in which a verdict of guilty was returned, there was sufficient evidence for the jury to find 1) that a loan was made, 2) that an attempt was made to collect the loan, 3)

1. Originally there were seven counts but Count II was subsequently dismissed by the United States Attorney prior to trial.

that "extortionate means" were used in the attempt, and finally, 4) that the acts were done knowingly by the defendants.

 In defendants' motion for a new trial, numerous arguments are advanced. First, they stress that the verdict is against the weight of the evidence. The power of the Court is, of course, much broader in granting a new trial than in granting a motion for judgment of acquittal since the Court "weighs the evidence of both sides, considers the credibility of witnesses and, if the verdict is against the weight of the evidence, a new trial must be granted." United States v. Pepe, supra, 209 F. Supp. at page 594. See also, United States v. Robinson, 71 F.Supp. 9 (D.C. D.C.1947). In weighing all the evidence, and, in effect, second guessing the jury, I cannot conclude a new trial is warranted here on the grounds that the verdict is against the weight of the evidence.

Quite aside from the weight of the evidence argument, the defendants further contend that the Court made numerous errors both procedural and evidentiary which further warrant their being granted a new trial.

██ During the course of deliberations, the jury requested that the testimony of three different government witnesses be re-read to them. The evidence in the case involved no express threats, and, therefore, as to each of the six counts, the jury was required to find from the evidence an implicit threat. In light of the realization that a determination as to the existence or non-existence of an implicit threat required an as accurate as possible recollection of the testimony on the part of the jury, the request was granted over the defendants' objection. The rule in the Third Circuit is stated in United States v. Jackson, 257 F.2d 41 (1958); such action rests within the Court's sound discretion. For the reasons stated above, the Court feels that discretion was not abused.

█ The procedure whereby this testimony was played and read back[2] to the jury in the jury room is also questioned. Opposing counsel were permitted to enter the jury room with the reporter and remained during the reading and replaying of the testimony. Defense counsel was specifically asked at the time if he objected to this procedure. He specifically stated that he did not. He now argues that the defendants were entitled to be present and that his failure to object cannot constitute a waiver of their right to be present. Nothing in the record indicates whether defense counsel's action was "an honest mistake" or a "deliberate trial tactic", see Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), or that the defendants were voluntarily absent, see Phillips v. United States, 334 F.2d 589 (9th Cir. 1964). Nevertheless, it is not even contended that defendants were in any way prejudiced by their absence, and it is difficult to see how the defendants' presence at the rereading of the testimony would have mattered. Conceding that such procedure is unusual and not to be encouraged, "* * * when it appears with certainty that no harm has been done, it would be the merest pedantry to insist upon procedural regularity. * * *" United States v. Compagna, 146 F.2d 524, 528 (2d Cir. 1944).

Defendants' most forceful arguments relate to the scope of reputation testimony admissible under 18 U.S.C. § 894(c), whether or not such testimony was permissible in this case, and whether certain other evidence as to the terms and civil collectibility of the credit extension sought to be collected is admissible when defendants are charged only under Section 894.

█ As to the first legal question, the scope of reputation testimony contemplated under § 894(c),[3] it is clear it

---

2. It involved both replay of tape recorded testimony and a reading by the reporter of his notes.

3. Section 894(c) reads, "* * * reputation of the defendant in any community of which the person against whom the

goes beyond the common law connotations suggested by defendants. The legislative intent was to broaden the rules of evidence and even to by-pass some of the stricter exclusionary rules of evidence. See Section 201 of Public Law 90–321.[4] Furthermore, if the limitation were as the defendants suggest, such testimony would be of little relevance to show that the defendants' words carried "an express or implicit threat." 18 U.S.C. § 894(c). As to whether the testimony was properly admitted in this case,[5] it should be noted that the jury was *instructed to consider it only in connection with the testimony of one Kenneth Alvin Walker.* Since the defendants were *not convicted of any counts involving the witness Walker,* the question became moot.

The second legal question deals with the admissibility of evidence tending to show the interest rate or collectibility by civil process of the credit extension sought to be collected in violation of Section 894 where the defendant is charged only under that section.

Defendants argue that such evidence is admissible only where they are simultaneously being prosecuted under Section 892.[6] The argument stems from the language of the statute which does not expressly say such evidence is admissible but merely states that "if [such] evidence has been introduced."

 The entire Section, Chapter 42, 18 U.S.C. § 891, et seq., deals with extortionate credit transactions and is so entitled. Section 894 clearly contemplates such evidence. Nowhere in Section 891, et seq., is the limitation suggested by defendants found. The statute was designed to make punishable under Federal law extortionate credit transactions and use of extortionate means to collect them.[7] In light of this,

---

alleged threat was made was a member at the time of the collection or attempt at collection." Section 892(c) reads: " * * * reputation *as to collection practices* of the creditor. * * *" (Emphasis supplied.) Defendants argue that the difference between the two sections (italicized) indicate that reputation in § 894(c) means only the common law inquiry as to general reputation for truth and veracity in the community in which the defendant lives. Therefore, defendants argue evidence as to a *defendant's reputation as to collection practices* under § 894(c) is not permitted by the statute.

4. See also, United States v. DeStafano, 429 F.2d 344, 347 (2d Cir. 1970), which apparently assumes without argument that the word reputation in § 894(c) includes the *defendant's reputation as a debt collector* to establish the threat.

5. Under Section 894(c), admissibility of such evidence is conditioned upon certain evidentiary prerequisites, and even if these are satisfied, admissibility is still discretionary. It is quite possible that the words "and direct evidence of the actual belief of the debtor * * * is not available" means that the debtor *himself* is unable to testify and not that the debtor, although available and able to testify, has no actual belief one way or another about the creditors practices.

6. Section 894 reads:
 "In any prosecution under this section, if *evidence has been introduced tending* to show the existence, at the time the extension of credit in question was made, of the circumstances described in 892 (b) (1) or the circumstances described in 892(b) (2). * * *"
 Section 892(b) (1) reads:
 "The repayment of the extension of credit, or the performance of any promise given in consideration thereof, would be unenforceable, through civil judicial processes against the debtor.
 (A) in the jurisdiction within which the debtor, if a natural person, resided or
 (B) in every jurisdiction within which the debtor, if other than a natural person, was incorporated or qualified to do business
 at the time the extension of credit was made."
 Section 892(b) (2) reads:
 "(2) The extension of credit was made at a rate of interest in excess of an annual rate of 45 per centum calculated according to the actuarial method of allocating payments made on a *debt* between principal and interest, pursuant to which a payment is applied first to the accumulated interest and the balance is applied to the unpaid principal."

7. The issue of whether Section 894 also covers the use of extortionate means to

therefore, it would be strange, indeed, to conclude that in the prosecution of a collector by extortional means under Section 894, evidence of the credit extension, itself, being an extortionate one under Section 892 would be inadmissible.

Finally, defendants challenge the sufficiency of the indictment, as to its specificity in apprising them of the extortionate means used in each count. Such a ground fails to challenge either jurisdiction or that an offense against the United States has been charged. See Gendron v. United States, 295 F.2d 897 (8th Cir. 1961). Therefore, it falls squarely within the time requirement of Rule 12(b) (3) and will be regarded as untimely made.

The motions for Judgment of Acquittal and a New Trial in the Alternative will be denied.

collect a non-extortionate extension of credit need not be considered here. See United States v. Perez, 426 F.2d 1073 (2 Cir. 1970); Westfall v. United States, 274 U.S. 256, 259, 47 S.Ct. 629, 71 L.Ed. 1036 (1927).